Opinion issued December 15, 2011.



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-10-00684-CR

————————————

frank anthony benitez, Appellant

V.

The
State of Texas, Appellee



 



 

On Appeal from the 230th District Court

Harris County, Texas



Trial Court Cause No. 1241615

 



 

 

MEMORANDUM
OPINION

          Appellant, Frank Anthony Benitez,
appeals a judgment convicting him of capital murder.  See Tex.
Penal Code Ann. § 19.03(a)(2) (West 2011).  Benitez pleaded not guilty before the
jury.  The jury found Benitez guilty, and
the trial court assessed his punishment at confinement for life.  In four issues, Benitez contends that the
evidence was insufficient to sustain his conviction, that the trial court erred
by allowing the State to present extraneous-offense evidence, that the trial
court erred by admitting portions of a letter written by Benitez, and that the
State’s closing argument impermissibly commented on his failure to testify.  We determine that the evidence was
sufficient, the trial court did not err by admitting the alleged extraneous-offense
evidence or the letter written by Benitez, and that the trial court did not err
in refusing to declare a mistrial based on the State’s allegedly improper jury
argument.  We therefore affirm.

Background

          On the afternoon of November 13, 2009,
Benitez and his friend, Keith Phillips, met outside the apartment complex where
Benitez had been staying with his friend Ruben Vidale and Vidale’s mother.  That evening, Phillips saw a long black gun
in Benitez’s possession.  Although the
gun was unloaded, Benitez had a magazine for the gun in his backpack.  When Phillips returned with Benitez to the
apartment complex around midnight, Benitez left with the gun.

          The next afternoon, Murial Todd,
returned from the grocery store to the same apartment complex.  While she was unloading her groceries from
her SUV, Benitez approached her with a loaded gun tucked into the waistband of
his pants.  Benitez demanded Todd’s purse
and the key to her SUV.  Todd hit Benitez
with a bag of groceries.  Benitez
responded by retrieving his gun and shooting a single bullet at Todd’s neck.  The bullet entered the right side of her neck
and exited her upper back, resulting in her death.  Without going through her purse or taking any
of her property, Benitez fled to Vidale’s apartment.  

          When Benitez approached, Vidale was
standing outside his apartment, near a stairwell, smoking a cigarette.  Without stopping or talking to Vidale, Benitez
went into the apartment.  Vidale followed
Benitez into Vidale’s bedroom and he asked Benitez what was wrong.  At first, Benitez refused to say
anything.  Sensing that Benitez was
nervous, Vidale became upset and again asked: “What’s going on?”  This time, Benitez confided that he had told Todd
to give him the keys to her car, that she slapped him in response, and that he
shot at her but did not know if the bullet had actually hit her.  Vidale began yelling and told Benitez that he
should leave.  

          Vidale’s mother, who had been sleeping
in her bedroom, awoke to the sound of her son arguing with Benitez.  When she emerged from her bedroom, she asked
them what was happening, but they would not say.  Benitez, Vidale, and Vidale’s mother left the
apartment.  Once they were outside, Vidale’s
mother again inquired as to what had happened. 
Benitez told her that Todd had hit him and that he pulled out a gun and
“hit” her in the neck.  Vidale’s mother
understood in light of his reference to the gun that by using the word “hit,” Benitez
was indicating that he had shot at Todd. 
After hearing this story, Vidale’s mother agreed with her son: Benitez
could no longer stay at the apartment.

          Benitez telephoned Phillips.  Sounding as if he were in danger or trouble, Benitez
told Phillips that Phillips needed to come pick him up.  Phillips asked, “What happened?  What’s wrong?”  Benitez answered, “I will tell you
later.  Just come and pick me up.”  Within fifteen minutes, Phillips arrived at
the apartment complex.  Phillips drove
the car, and had two passengers: Clifford Loche was sitting in the front
passenger’s seat and another passenger was in the back.  Benitez got in Phillips’s car, carrying his
backpack.  Phillips asked Benitez what
had happened, but Benitez said that he would tell Phillips later when they were
alone. Phillips dropped the other passenger off at his home, and Benitez,
Phillips, and Loche proceeded to Phillips’s home.  

          Loche waited outside Phillips’s
bedroom while Phillips and Benitez talked inside.  Benitez told Phillips that, in the apartment’s
parking lot, he had asked Todd to hand over her purse and car keys and that, in
response, she looked at him as if he were stupid and hit him with her grocery
bag.  Benitez said that after being hit,
he pulled out the gun, which he had in his waistband, and he shot her in the
neck.  While telling Phillips what had
happened, Benitez pulled out the gun from his backpack and showed it to Phillips.  After hearing this story, Phillips informed Benitez
that he could not stay at his house and that he would have to find somewhere
else to go.  Benitez telephoned his
cousin Omar Pimento, but Phillips could not understand the ensuing conversation
because they conducted it in Spanish.  After
the call, Loche entered the room and Benitez related the story again.  

          Over the next few hours, Benitez, Phillips,
and Loche played videos games.  Loche
went home but returned around 10:00 p.m. and drove Phillips and Benitez to Pimento’s
house.  On the ride over, Benitez
discussed how he needed to get rid of the gun. 
He telephoned Pimento again and told him, in English, that he needed to
get rid of the gun.  After hanging up, Benitez
told Phillips that he should sell the gun, and Phillips agreed.  

          On November 17, police arrested Benitez
pursuant to an arrest warrant.  Two days
later, the Harris County Grand Jury indicted Benitez for capital murder,
alleging that on or about November 14, Benitez, while in the course of
committing a robbery of Todd, intentionally caused her death by shooting her
with a deadly weapon, namely a firearm.  

          The jury found Benitez guilty of
capital murder.  The court assessed his
punishment at life in prison.  This
appeal followed.

 

 

 

Sufficiency of
the Evidence

In his first issue, Benitez contends that the evidence
is insufficient to sustain his conviction for capital murder because it failed
to establish that he intentionally caused Todd’s death.  

          A.      Standard
of Review

This
Court reviews legal and factual sufficiency challenges using the same standard
of review.  Ervin v. State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d).  Under
this standard, evidence is insufficient to support a conviction if considering
all record evidence in the light most favorable to the verdict, a factfinder
could not have rationally found that each essential element of the charged
offense was proven beyond a reasonable doubt.” 
Gonzalez v. State,
337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref’d) (citing Jackson
v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979)).  Evidence is insufficient under this standard
in four circumstances: (1) the record contains no evidence probative of an
element of the offense; (2) the record contains a mere “modicum” of evidence
probative of an element of the offense; (3) the evidence conclusively
establishes a reasonable doubt; and (4) the acts alleged do not constitute the
criminal offense charged.  Gonzalez, 337 S.W.3d at 479; see Jackson,
443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11.  If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal.  Gonzalez, 337 S.W.3d at 479.

An appellate
court “determine[s] whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence viewed in the light most
favorable to the verdict.”  Clayton v.
State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007) (quoting Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).  When the record supports conflicting
inferences, an appellate court presumes that the factfinder resolved the
conflicts in favor of the verdict and defers to that resolution.  Id. (citing Jackson, 443 U.S. at 326, 99 S. Ct. at
2793).  “An appellate court likewise
defers to the factfinder’s evaluation of the credibility of the evidence and
weight to give the evidence.”  Gonzalez, 337 S.W.3d at 479.  In viewing the record, a court treats direct
and circumstantial evidence equally: circumstantial evidence can be as
probative as direct evidence, and “circumstantial evidence alone can be
sufficient to establish guilt.”  Clayton, 235 S.W.3d at 778 (quoting Hooper, 214 S.W.3d at 13).

          B.      Applicable
Law   

A person commits capital
murder if he intentionally or knowingly causes the death of an individual and intentionally
commits the murder in the course of committing or attempting to commit
robbery.  See Tex. Penal Code Ann.

§§ 19.02(b)(1) 19.03(a)(2) (West 2011); Sholars v. State, 312 S.W.3d 694, 695 n.1 (Tex. App.—Houston [1st
Dist.] 2009, pet. ref’d) cert. denied,
Sholars v. Texas, 131 S. Ct. 156
(2010).  A person commits robbery if, in
the course of committing theft and with intent to obtain or maintain control of
the property, he intentionally, knowingly, or recklessly causes bodily injury
to another; or intentionally or knowingly threatens another with, or places
another in fear of, imminent bodily injury or death.  Tex.
Penal Code Ann. § 29.02(a) (West 2011); Sholars, 312 S.W.3d at 703.  “A
person acts intentionally . . . with respect . . . to a result of his conduct
when it is his conscious objective or desire to . . . cause the result.”  Tex. Pen. Code Ann. § 6.03 (West 2011).  A deadly weapon is a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury, or anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.  Tex.
Penal Code Ann. § 1.07(17) (West 2011); see Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979)
(holding that evidence defendant pointed “gun,” “pistol,” or “revolver” at
complainant was sufficient to prove use of “deadly weapon”).

Capital murder requires an intent to kill.  See Tex. Penal Code Ann. 
§ 19.03(a)(2).  Intent is most
often proven through the circumstantial evidence surrounding the crime.  Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), overruled on other grounds, Fuller
v. State, 829 S.W.2d 191 (Tex. Crim. App. 1992); Dominguez v. State, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  A jury may infer intent from any facts that
tend to prove its existence, such as the acts, words, and conduct of the
defendant.  Hernandez, 819 S.W.2d at 810; Beltran
v. State, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); Dominguez, 125 S.W.3d at 761. 
Additionally, intent to kill may be inferred from the use of a deadly
weapon, unless it would not be reasonable to infer that death or serious bodily
injury could result from the use of the weapon.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Dominguez, 125 S.W.3d at 762. 
When a deadly weapon is fired at close range, and death results, the law
presumes an intent to kill.  See Sholars, 312 S.W.3d at 703 (citing Childs v. State, 21 S.W.3d 631, 635
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d)).        

C.      Analysis

          Benitez does not dispute that, while in the course of robbing Todd, he possessed a
gun, which discharged, causing Todd’s death. 
However, Benitez contends that the evidence was insufficient to show
that he intentionally caused Todd’s death. 
The State presented multiple witnesses who each testified that Benitez
admitted that he shot Todd in the neck after she tried to thwart Benitez’s
attempt to take her keys and purse.  Vidale’s
mother testified that, the day of the shooting, while indicating where he was
holding a gun, Benitez told her that he “hit” Todd in the neck after she hit
him.  Phillips likewise testified that
the day of the shooting Benitez admitted he had “shot an old lady” while trying
to get some money.  Specifically, Phillips
testified that Benitez said he shot her after he had asked her for her keys and
purse, and she looked at him as if he was stupid and hit him with her grocery
bag.  Phillips also testified that he
heard Benitez tell his cousin Pimento that Benitez shot a woman while trying to
“hit a lick,” or get money.  Similarly, Vidale
testified that Benitez told him that, after instructing Todd to give him the
keys to her car, she slapped him and he shot at her one time, but was unsure whether
the bullet had hit her.  Loche testified that
on the evening of the shooting, Benitez told Loche that he tried to rob a woman,
and that he had shot her.  While Benitez
related the details of the shooting to multiple witnesses, none of the
witnesses testified that Benitez claimed the shooting had been an
accident.  Additionally, Jill Dupree, a
firearms examiner with the Harris County Sherriff’s office, testified that the type
of gun used to kill Todd had a safety lock, which required a person to
disengage the lock manually before the weapon would fire. 

          We
conclude that a rational jury could have inferred that Benitez intentionally
caused Todd’s death.  The evidence showed
that Benitez approached Todd with a loaded weapon in his waistband and demanded
her keys and purse.  After Todd hit Benitez,
he pulled the gun from his waistband, pointed it towards Todd’s neck, and fired
a bullet at close range, causing her death. 
Based on the combined and cumulative force of all of the evidence viewed
in a light most favorable to the verdict, we find that the evidence is
sufficient to support Benitez’s conviction. 
See Childs, 21 S.W.3d at 635
(finding evidence sufficient to show intent to kill when witness testified he
had seen appellant point a gun at complainant, and moments later witness heard
two shots); see Jones, 944 S.W.3d at
647 (holding evidence was sufficient to find intent to kill where evidence
showed appellant used a gun during a robbery and that appellant had to
intentionally pull the trigger for the gun to fire); see also Dominguez,
125 S.W.3d at 762 (holding evidence was sufficient to find intent to kill when
evidence showed, defendant, in course of attempted theft, retrieved loaded
shotgun from car trunk and shot complainant in abdomen, resulting in
complainant’s death).

          We overrule Benitez’s first issue.

Evidentiary
Issues

In his second and fourth issues, Benitez contends that
the trial court erred by admitting extraneous-offense or bad-act evidence and a
letter written by Benitez to his friend.

          A.      Standard of
Review

          We review the admission of evidence by
the trial court for an abuse of discretion. 
McDonald v. State, 179 S.W.3d
571, 576 (Tex. Crim. App. 2005).  If the
trial court’s decision is within the zone of reasonable disagreement, we will
not disturb it on appeal.  Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1991).  “Furthermore, if
the trial court’s evidentiary ruling is correct on any theory of law applicable
to that ruling, it will not be disturbed even if the trial judge gave the wrong
reason for his right ruling.”  De La Paz v. State, 279 S.W.3d 336, 344
(Tex. Crim. App. 2009).

          B.      Benitez’s
possession of the gun on the day before the murder  

          In his second issue, Benitez contends
that the trial court erred by allowing the State to present evidence that
Benitez was in possession of a weapon the day before the crime, because Benitez
was not given proper notice of the State’s intent to use the evidence as
required by Rule 404(b), and the evidence’s risk of unfair prejudice substantially
outweighed its probative value. 

          Because Benitez’s motion in limine covered extraneous offenses, the State
approached the bench during the guilt-innocence stage of the trial and informed
the trial court that it was going to have Phillips testify that the night
before the shooting, Benitez, while in possession of a gun, drove around with
his friends looking for someone to rob. 
Benitez objected that this evidence would be “too prejudicial at this
time.”  The trial court stated that it
would allow the testimony that Benitez was in possession of a gun the night
before the murder, but exclude the testimony that Benitez and his friends were
looking for someone to rob.  Benitez made
no further objections.  Phillips then
testified, without objection, that he had seen Benitez with a long black gun the
night before the shooting, and that the gun was similar in appearance to the
gun recovered by the State and entered into evidence.  

          Evidence of other crimes, wrongs, or
acts is excludable if and to the extent that it is offered to prove the
character of a person in order to show action in conformity therewith.  Tex.
R. Evid. 404(b).  “It may,
however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
or accident, provided that upon timely request by the accused in a criminal
case, reasonable notice is given in advance of trial of intent to introduce in
the State’s case-in-chief such evidence other than that arising in the same
transaction.”  Id. 

          On
appeal, Benitez contends the trial court erred in admitting Phillip’s testimony
that Benitez had a gun the day before the murder because it runs afoul of Rule
404(b).  Benitez claims he did not get
proper notice of the State’s intent to offer evidence of the extraneous offense
or bad act.  An objection at trial must
comport with the complaint raised on appeal.  See
Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005); Lopez v. State, 200 S.W.3d 246, 251 
(Tex. App.—Houston [14th Dist.] 2006,
pet. ref’d).  Although Benitez objected
that the testimony was too prejudicial, he failed to make an objection under
Rule 404(b) and, therefore, waived these arguments.  See Tex. R. App. P. 33.1(a)(1)(A); Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002); Lopez, 200 S.W.3d
at 251 (an objection under Rule 403 alone is not sufficient to preserve error
under Rule 404(b)).  

Benitez did, however, preserve
his objection that this testimony was inadmissible under Rule 403.  “Although relevant, evidence may be excluded
if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.”  Tex.
R. Evid. 403.  “[A] trial court,
when undertaking a Rule 403 analysis, must balance (1) the inherent probative
force of the proffered item of evidence along with (2) the proponent’s need for
that evidence against (3) any tendency of the evidence to suggest decision on
an improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already admitted.”  Gigliobianco
v. State, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

          Evidence that Benitez, on the day
before the shooting, possessed a gun similar to the one used to shoot Todd is probative
in that it makes it more probable that Benitez used that gun to cause Todd’s
death.  The State had a need to prove the
elements of the offense, including that Benitez used the gun to shoot Todd.  This evidence does not suggest a decision on
an improper basis, nor does it have a tendency to confuse or distract the jury
from the main issues in the case, as it was directly related to the elements of
the offense and was not difficult to understand.  Finally, the testimony did not take up an
inordinate amount of time or repeat evidence already admitted, as this was the
only evidence from a witness who had observed Benitez in possession of a gun.  Considering the Gigliobianco factors, we cannot say that the trial court abused its
discretion in allowing Phillips’s testimony. 
See Andrade v. State, 246 S.W.
3d 217, 228–29 (Tex. App.—Houston [14th Dist.] 2007, pet. ref’d) (photograph of
appellant holding the same weapon as used in murder for which he was convicted was
admissible under Rule 403); see also M’Bowe
v. State, No. 03-09-00160-CR, 2010 WL 2133909 (Tex. App.—Austin, May 27, 2010, no
pet.) (mem.op., not designated for publication) (appellant’s possession of gun
similar to one used in alleged offense was admissible under Rule 403).  

          We overrule Benitez’s second issue. 

C.      Letter Written by Benitez 

          In his fourth issue, Benitez contends
that the trial court erred by admitting excerpts from a letter Benitez wrote to
his friend because the statements were hearsay not within an exception, irrelevant,
and were substantially more prejudicial than probative.    

The redacted letter, dated January 11, 2010, was addressed
to Phillips.  It read:

Dear Keith
[P]hillips                                             January
11, 2010

 

. . . .

 

But on da
cool I was setup[.]  [Y]a dig where I[’]m
going with this b/c I wouldn’t do anything like this[,] right[?]

 

. . . .

 

Well
apparently they don’t have enough evidence to prove nothing [sic], not even
that I shot the gun.

 

. . . .

 

What
exactly do they know brother?  [N]ot a
lot [sic]

 

. . . .

 

Even if
they try to say or prove it was me witch [sic] it wasn’t

 

. . . .

 

! [Pimento’s]
in jail and if there are fingerprints on the gun they are not mines [sic] they
my cousin[’]s b/F.  So I guess he’s
fucked or something.

 

. . . .

 

Nobody I mean no body! fucks
over me or you.  My rules[.] My game[.]  My style.

 

. . . .

 

Much love + care           always        Frank Anthony Benitez

 

          Benitez first argues that the
statements are hearsay and do not qualify as statements against interest because
Benitez’s guilt could not be inferred from the statements.  See
Tex. R. Evid. 803(24), 801(e)(2)(A).  But Rule 801 defines a party’s own statements
as “not hearsay.”  Tex. R. Evid. 801.  We hold that the statements are admissible as
admissions by a party-opponent, and that it was thus unnecessary for the State
to demonstrate the applicability of an exception to the hearsay rule.  See Trevino
v. State, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (“[P]arty admissions,
unlike statements against interest, need not be against the interests of the
party when made; in order to be admissible, the admission need only be offered
as evidence against the party.”); see
also Johnson v. State, 208 S.W.3d
478, 510 (Tex. App.—Austin 2006, pet. ref’d) (letter shown to be written by
appellant was not hearsay when offered against her at trial).

Benitez also argues that these statements should have
been excluded under Rules 401 and 403.  Evidence
is excludable as irrelevant if it is not probative of any fact material to the
action.  Tex. R. Evid. 401, 402. 
Relevancy is determined by whether a reasonable person, with some
experience in the real world, believes that the particular piece of evidence is
helpful in determining the truth or falsity of any fact of consequence.  Montgomery
v. State, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (op. on reh’g). The
evidence does not have to prove or disprove a particular fact; it is sufficient
if the evidence provides “a small nudge toward proving or disproving some fact
of consequence.”  Stewart v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).  Under Rule 403, relevant evidence may still
be excludable if the probative value substantially outweighs the danger of
unfair prejudice.  Tex. R. Evid. 403.  

Benitez contends that the statements in the letters
are not relevant because they do not tend to establish any fact that is of
consequence to the case.  We disagree.  The statements were relevant because, in
them, Benitez does not make the claim, as he did at trial, that the shooting
was an accident or mistake.  Benitez’s
claim that he was “set up,” his suggestion that the State lacks evidence that
he shot the gun, and his claim that his cousin may be implicated, are all
inconsistent with his claim at trial that he shot Todd but did so accidentally or
by mistake.  

Similarly, weighing the factors from Gigliobianco, we find that the trial
court did not abuse its discretion in admitting the statements over Benitez’s
Rule 403 objection.  See Gigliobianco, 210 S.W.3d at 641–42; Tex. R. Evid. 403.  The
statements in the letter were probative; they provide a nudge toward proving
the State’s contention that Benitez intended to kill Todd by demonstrating that
Benitez failed to assert at any time prior to the trial that the shooting was
an accident.  The State had a need to
discredit Benitez’s contention that the shooting was accidental in order to meet
its burden to prove that he intended to commit the murder.  Benitez asserts the expletives in the letter
were unfairly prejudicial, but the trial court could have reasonably concluded
that the expletives in the letter written by Benitez do not suggest a decision on
an improper basis in a trial for capital murder.  The trial court could have also reasonably
concluded that the letter would not confuse or distract the jury from the main
issues in the case because the letter relates to Benitez’s state of mind, which
was a central issue at trial.  In
addition, there is no evidence showing that the jury was not equipped to weigh
the probative value of the letter and, in any event, the letter did not refer
to any act or extraneous offense to which the jury might have given undue
weight as it evaluated the probative force of the evidence.  A reasonable trial court could have concluded
that the evidence was not time consuming as the letter consisted only of brief
excerpts for the jury to consider.  Finally,
testimony about the letter was brief, and was not cumulative as the letter was
the only evidence showing Benitez still had not asserted his theory of the
shooting as an accident, even after he was arrested and imprisoned.  We cannot say that the trial court abused its
discretion in admitting the letter over Benitez’s Rule 403 objection.  See
Gigliobianco, 210 S.W.3d at 641–42. 

          We overrule Benitez’s fourth issue.

Closing Argument

In his third issue, Benitez contends that in closing
argument, the State impermissibly commented on Benitez’s failure to
testify.  Although Benitez argues that the trial court erred when it overruled his
objection to the State’s jury argument, the trial court actually sustained the
objection but overruled Benitez’s motion for a mistrial.  We therefore construe Benitez’s complaint as a
complaint about the trial court’s denial of his request for a mistrial.  See Crocker
v. State, 248 S.W.3d 299, 303 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d)
(when appellant incorrectly asserts trial court erred in overruling an
objection it in fact sustained, “we construe his complaint to be one as
to the adverse ruling against him—namely, the trial court’s denial of his
request for an instruction to the jury to disregard the prosecutor’s statement
and a mistrial”).  

A comment on a defendant’s failure to
testify offends the Texas and United States Constitutions, as well as Texas
statutory law.  U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim.
Proc. Ann. art. 38.08 (West 2005).  A prosecutor’s comment amounts to an
impermissible comment on a defendant’s failure to testify only if, when viewed
from the jury’s standpoint, the comment is manifestly intended to be, or is of
such character that a typical jury would naturally and necessarily take it to
be, a comment on the defendant’s failure to testify. Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); Bustamante v.
State, 48 S.W.3d 761, 765
(Tex. Crim. App. 2001).

During the defense’s closing argument, Benitez’s
counsel argued that Benitez fired only one bullet out of a magazine of eight
and that Benitez did not intend to kill Todd. 
During its closing argument, the State countered:

[Benitez] didn’t count on the
fact that [the persons whom he told about the shooting] were going to come in .
. . and tell you exactly what he told them that day.  And he did not tell one of those people that
it was an accident.  He did not tell one
of those people that the gun just went off. 
He did not tell one of those people that he didn’t mean it.

 

. . . .

 

[Benitez’s counsel] stood up
here [during opening arguments] and promised you that he was going to prove to
you [the killing] was an accident.  And
the State brought you 17 witnesses and he was not able through one of those to
prove to you that this was an accident. 
Not one.  Not one shred of
evidence.  And I want you to remember
that what [Benitez’s counsel] said to you when he stood up here is not
evidence.  You did not hear one thing
from the witness stand, you did not see one piece of evidence that supported—

 

Benitez’s counsel then objected that this was “getting
into the Fifth amendment area.”  The
trial court sustained the objection and instructed the jury “Ladies and
gentlemen, what the lawyers say on both opening statements and closing
statements is not evidence. And that applies to both sides.”[1]  Benitez moved for a mistrial, which the trial
court denied.

Although Benitez did not request an instruction to
disregard, the trial court sua sponte
instructed the jury that what lawyers say in opening and closing arguments is
not evidence.  This was the functional
equivalent of an instruction to disregard. 
Thus, Benitez’s subsequent request for a mistrial preserved this issue for review.  See Archie v. State,
221 S.W.3d 695, 698–99
(Tex. Crim. App. 2007).  (trial court’s sua sponte instructions to “[i]nstruct
the jury that they will—I sustain the objection and instruct the jury they
will follow the Court’s instruction” was functionally equivalent to motion to
disregard and therefore denial of appellant’s motion for mistrial was proper
issue for review).  We thus turn to the
trial court’s denial of Benitez’s motion for a mistrial.  

In reviewing a trial court’s
ruling on a motion for mistrial, an appellate court must uphold the trial court’s
ruling if it was within the zone of reasonable disagreement.  Wead v.
State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  “Only in extreme circumstances, where the
prejudice is incurable, will a mistrial be required.”  Hawkins
v. State, 135 S.W.3d. 72, 77 (Tex. Crim. App. 2004).  The standard of review is abuse of
discretion.  Archie, 221 S.W.3d at
699.  

To determine whether a trial court abused its
discretion by denying a mistrial, we apply the Mosley test.  Ramon v. State, 159 S.W.3d 927, 929
(Tex. Crim. App. 2004) (citing Mosley v. State, 983 S.W.2d 249 (Tex. Crim.
App. 1998)).  We balance three factors:
(1) the severity of the misconduct or the magnitude of the prejudicial effect,
(2) the measures adopted to cure the misconduct, and (3) the certainty of
conviction absent the misconduct.  Id.  

Here, the State’s comment directly followed the State’s
summary of its own evidence and did not highlight Benitez’s failure to testify
at trial.  Rather, the State’s comment
pointed out Benitez’s failure to claim—on
the day of the shooting when he described the details of the incident to
various witnesses—that the shooting was accidental.  In addition, the State’s comment was
brief.  We do not view this as severe
misconduct under Mosley.  

As to the second factor, we find the trial court
correctly instructed the jury that the State’s comment was not evidence, and
that the trial court gave this curative instruction without bringing
unnecessary attention to the comment.  The jury instructions likewise informed the
jury that the defendant had elected not to testify and the jury “cannot and
must not refer to or allude to that fact through [their] deliberations or take
it into consideration for any purpose whatsoever as a circumstance against
him.”  We view these curative measures as
sufficient to ameliorate any harm that resulted from the State’s comment.  See Dukes
v. State, 239 S.W.3d 444, 451 (Tex. App.—Dallas 2007, pet. ref’d) (charge
that stated jury could not take appellant’s decision not to testify under
consideration for any purpose was a curative factor to consider under Mosley); Longoria v. State, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th
Dist.] 2004, pet ref’d) (noting that reference to failure to testify was not so
blatant as to render instruction to disregard ineffective where trial court
sustained defense counsel’s objection, instructed jury to disregard the statement,
and jury charge instructed jury that it could not consider for any purpose
appellant’s decision not to testify).   

As to the third factor, we find Benitez’s admissions
to several witnesses on the day of the shooting to be strong evidence supporting
the conviction.  In light of this, we
cannot say that the trial court abused its discretion in denying Benitez’s
motion for mistrial.  See Mosley, 983 S.W.2d at 260; see also Dukes, 239 S.W.3d at 451 (trial
court did not err in denying motion for mistrial following State’s comment to
jury that it “get[s] to decide whether or not somebody does what they’re supposed
to and said you know what, I made a mistake” because comment was brief, curative
instructions were given during trial and in jury instructions, and there was
strong enough evidence that appellant’s conviction was certain).

We overrule Benitez’s third issue. 

Conclusion

          We affirm the judgment of the
trial court

 

                                                                   Rebeca
Huddle

                                                                   Justice

                                                

Panel consists of Chief
Justice Radack and Justices Bland and Huddle.

 

Do not publish.  Tex.
R. App. P. 47.2(b).

 

 











[1]               The
jury charge instructed the jury that it could not consider for any purpose, 

Benitez’s
decision not to testify.