**Heywood Joseph SHOLARS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–08–00060–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 24, 2009.

Discretionary Review Refused
March 3, 2010.

Danny Karl Easterling, Easterling & Easterling, P.C., Houston, TX, for Appellant.

Bridget Holloway, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HANKS, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Heywood Joseph Sholars, of capital murder.[1] The trial

---

1. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2008) ("A person commits an offense if he commits murder as defined under Section 19.02(b)(1) [and] the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat. . . .").

court sentenced appellant to life in prison. In two points of error, appellant argues that (1) the trial court erred in using a stair-step instruction which prohibited consideration of a lesser offense in determining guilt as to the charged offense and in permitting prosecutorial jury argument that repeated the error; and (2) the evidence presented at trial was factually insufficient to show that appellant intentionally shot the complainant or intended to shoot another person.

We affirm.

### Background

On April 7, 2005, at approximately 9:00 p.m., appellant and Jesse Davis traveled to a shopping center on Griggs Road in Houston, Texas. Appellant and Davis arrived at the shopping center, stood on the sidewalk and watched as patrons of the Winning World gaming room at 5060 Griggs Road entered and exited the illegal gaming business. Appellant was carrying a black gun in his pocket. Both appellant and Davis were wearing black shirts, black shorts, and black hats. Paul Boutte arrived at the gaming room and rang the doorbell to gain entry. The manager, Melissa Rivera, opened the door to let Boutte into the gaming room. As Boutte entered the gaming room, appellant and Davis ran down the sidewalk toward the gaming room. Appellant and Davis ran behind Boutte and began to push him into the gaming room. An unidentified customer shouted, "Don't let them in." Boutte quickly turned and tried to close the door behind him to prevent appellant and Davis from entering the gaming room.

Appellant was standing outside the door of the gaming room; Davis was standing behind appellant. Appellant and Boutte were struggling as Boutte tried to prevent appellant from entering the gaming room. The complainant saw Boutte struggling to keep appellant outside and came up behind Boutte to assist him. Appellant opened the door and placed his foot in the door to pry it open. Appellant was able to open the door approximately six inches. He took the gun from his pocket with his right arm and pointed it at Boutte through the door. Appellant fired the gun once and paused for approximately two seconds before firing the gun again. The complainant was struck in the abdomen. Appellant did not speak throughout the entire transaction of events.

After the second shot, Davis grabbed appellant's right arm and pulled it out of the door frame. Appellant and Davis ran away from the scene and passed Yosly Ordonez's home. Ordonez was on the porch of her home when she heard noises resembling gunshots. Soon after she heard the noises, appellant and Davis ran in front of the house. She asked appellant and Davis why they were running "like you did something." Neither responded to Ordonez's question. Appellant and Davis disposed of the gun, ran to their car, which was parked at a nearby apartment complex, and drove away from the scene. On April 12, 2005, after receiving an identification from Ordonez, Houston Police Department ("HPD") officers arrested appellant. Appellant was charged with committing the offense of capital murder by attempting to commit a robbery and intentionally causing the death of the complainant by shooting him with a deadly weapon, namely a firearm.

Trial began on January 8, 2008. At trial, the State presented testimony from Boutte. Boutte testified that as he was struggling to prevent appellant from opening the door, he saw appellant take the gun from his pocket. Appellant aimed the gun toward Boutte. Boutte testified that he used his left hand "and started tussling with him with the gun and the gun kept

going back and forth." He also testified that appellant shot the gun "more than two times."

The State also presented testimony from Ordonez. Ordonez testified that she was an acquaintance of both appellant and Davis because they lived in the same neighborhood. She immediately recognized them when they ran in front of her house. As they were running in front of her house, she saw an object in appellant's hand but was not certain whether appellant was carrying a gun. When she asked them why they were running, appellant and Davis failed to respond. Ordonez testified that appellant and Davis ran toward three apartment complexes down the street.

The State also presented testimony from Davis. Davis testified that he pled guilty to aggravated robbery in this case and was awaiting sentencing at the time of his testimony. He stated that he and appellant had been friends and associates for over 10 years. Davis testified that appellant wanted to rob the gaming room and asked him to assist in the robbery. Appellant knew the layout of the gaming room and also knew where the gaming room's money was stored. Appellant also possessed a gun, which Davis described as a ".357 Magnum." Davis testified that, during the incident, he and appellant were trying to force themselves into the gaming room when Boutte blocked their entry. During the struggle with Boutte, appellant pulled his gun out of his pocket with his right hand and pointed it inside the door frame. Davis testified that he could not see the gun after appellant pointed it inside the door frame. However, he heard appellant fire the gun once. Appellant paused for two seconds and fired the gun again. Davis testified that after the second shot he took appellant's right arm and pulled it

out of the door frame. He and appellant then ran away from the gaming room.

The State presented testimony from HPD Officer D. Shorten. Shorten testified that he investigated the crime scene and obtained statements from Boutte, Ordonez, Rivera, and other witnesses. He prepared two different photo spreads, one containing appellant's picture and one containing Davis's picture. On April 8, 2005, he presented the photo spreads to Boutte, but Boutte could not make an identification of either appellant or Davis. He also presented the photo spreads to Ordonez. Ordonez identified appellant as one of the people running in front of her home in the period after the incident. Shorten testified that, on April 13, 2005, HPD police officers presented Boutte with a "video lineup" that included appellant. Boutte identified appellant as the shooter.

Appellant presented testimony from Rudy Vargas, a private investigator. Vargas testified that he interviewed Ordonez and that she told him she was not certain that appellant was carrying a gun when he ran in front of her house. Vargas testified that Ordonez said the object appellant was carrying looked like a "big white gun."

At the end of the guilt/innocence phase, the trial court read the entire charge to the jury. It stated, in relevant part:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of April, 2005, in Harris County, Texas, [appellant] did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Melissa Rivera, intentionally cause the death of [the complainant] by shooting [the complainant] with a deadly weapon, namely, a firearm, then you will find the defendant guilty of capital murder, as charged in the indictment.

Or, if you believe from the evidence, beyond a reasonable doubt that [appellant] in Harris County, Texas, on or about the 7th day of April, 2005, intending to cause the death of Paul Boutte by shooting at Paul Boutte with a deadly weapon, namely a firearm while in the course of committing a robbery of Melissa Rivera, did then and there cause the death of [the complainant] by shooting [the complainant] with a deadly weapon, namely a firearm while in the course of committing or attempting to commit a robbery of Melissa Rivera, then you will find the defendant guilty of capital murder as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and next consider whether [appellant] is guilty of the lesser offense of felony murder.

. . . .

Unless you so find from the evidence beyond the reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of felony murder and next consider whether [appellant] is guilty of the lesser offense of aggravated robbery.

. . . .

Unless you so find from the evidence beyond the reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of aggravated robbery and next consider whether [appellant] is guilty of the lesser offense of manslaughter.

. . . .

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

Regarding the jury charge, the State made the following closing argument to the jury, in relevant part:

[State]: Remember how lessers work and how you are instructed to deliberate on them. You have to decide whether he is guilty or not guilty of capital murder first. If you have a reasonable doubt, then you must acquit him of capital murder. And remember, it's an individual deliberation. If you believe he's guilty of capital murder, then that is your deliberation. And all 12 of you, in order to get to a lesser offense and start deliberating about that, you are told in that charge—

[Appellant]: Objection as to any instructions at this point as to how to deliberate. That's outside the charge.

[Court]: Just restate your argument. That's overruled.

[State]: Yes, ma'am. That charge instructs you that you must first deliberate on the higher offense and only if, effectively only if you acquit of capital murder do you then consider the next offense of felony murder. And only if you acquit of felony murder so you go down to the next. The bottom line is when you go back there to deliberate and you believe beyond a reasonable doubt that [appellant] intended to kill one of those two men and he did kill [the complainant] while he was trying to commit a robbery, he is guilty of capital murder and that is it. You do not deliberate about any of and do not discuss the lessers at all.

On January 16, 2008, the jury convicted appellant of capital murder and the trial court sentenced him to life in prison. Appellant filed notice of appeal.

### Jury Instruction and Prosecutorial Error

In the first part of his first point of error, appellant argues that the trial court erred in using a stair-step instruction that prohibited consideration of a lesser offense in determining guilt as to the charged offense. Appellant also argues that the error "was echoed in prosecutorial argument," to appellant's harm.

#### 1. Jury Instruction

■ Appellant first complains that the jury charge was a "stair-step" charge that required the jury unanimously to decide guilt or innocence as to the greater offense of capital murder "before even considering whether the appellant was guilty of any lesser offense." He argues that such a charge is inconsistent with the State's burden of proof beyond a reasonable doubt of every element of the crime. He cites to *Apprendi v. New Jersey,* in which the United States Supreme Court held that, as a matter of due process of law, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Appellant argues that *Apprendi* "also applies to distinctions between greater and lesser offenses which are distinguished by some element in the greater which is absent from the lesser" and that "stair-step" instructions deprive a defendant of his constitutional right to have all the elements of each crime with which he is charged considered. Appellant states that "to make *Apprendi* effective, a jury should be called upon to compare a greater offense and a lesser offense, with attention paid to the element which distinguishes the two offenses." He contends that "a stair-step instruction not only fails to assure such a comparison, but actually precludes it through specific instruction" from deciding the greater offense first without considering the lesser. We disagree with appellant's claim that the instruction given in this case was a stair-step instruction.

■ A claim of error in the jury charge is reviewed using the procedure set out in *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984), *overruled on other grounds, Rodriguez v. State,* 758 S.W.2d 787 (Tex.Crim.App.1988). *Barrios v. State,* 283 S.W.3d 348, 350 (Tex.Crim. App.2009). The first step is to determine whether there is error in the charge. *Barrios,* 283 S.W.3d at 350; *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If there was error and the appellant objected to the error at trial, reversal is required if the error is calculated to injure the rights of the defendant, i.e., if there is some harm. *Barrios,* 283 S.W.3d at 350; *Almanza,* 686 S.W.2d at 171. If the error was not objected to, it must be fundamental and will require reversal only if it was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Barrios,* 283 S.W.3d at 350; *Almanza,* 686 S.W.2d at 171. The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

The proper construction of the jury charge in this case is controlled by *Barrios.* Reaffirming and clarifying its prior holding in *Boyett v. State,* 692 S.W.2d 512 (Tex.Crim.App.1985), the Court of Criminal Appeals held in *Barrios* that the type of instruction at issue in this case is a proper sequencing instruction of the type appellant seeks and not a "stair-step instruction" that requires unanimity of the jury at any stage prior to the verdict.

*Barrios,* 283 S.W.3d at 352–53; *see Boyett,* 692 S.W.2d at 516.

In *Barrios,* the appellant argued, similarly to appellant in this case, that an instruction telling the jury to "acquit" the defendant if it has a reasonable doubt that he is guilty of the greater offense and next consider the lesser offense and the view that the sequencing instruction requires unanimity before the jury can consider lesser-included offenses are mutually exclusive. 283 S.W.3d at 352. If the defendant is convicted of the greater offense, the inquiry ends; if he is acquitted under the sequencing instruction, there is "nothing to compare the lesser-included offense to when subsequently considering the instruction on benefit of the doubt." *Id.* The disposition of the greater offense has by that time already been decided by the jury, and the instruction on benefit of the doubt becomes superfluous. *Id.*

The Court of Criminal Appeals stated, "Appellant's conclusion arises from a narrow interpretation of the charge. Unanimous verdicts are the final decisions of a jury, delivered to the court after its deliberations are complete." *Id.* Under the sequencing instruction, the order in which the parts of the jury charge are considered is left to the discretion of the jury. *See id.* Such a jury instruction also adequately instructs jurors to consider the defendant's requested instructions on lesser included offenses. *Boyett,* 692 S.W.2d at 516. The trial judge reads the entire charge to the jury before it retires to deliberate. *Barrios,* 283 S.W.3d at 353. Thus the jurors will have heard the instruction on the benefit of the doubt before considering the issue of guilt on any of the offenses included in the charge. *Id.* "Therefore, even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they have already been instructed that they may consider guilt as to the lesser

offense before deciding on a verdict as to the greater offense." *Id.*

The court observed that the instruction's "use of 'acquit' as it is understood in relation to delivery of a verdict is at odds with the context of the instruction" in relation to jury deliberations, in which "the intended meaning seems to be 'have a reasonable doubt of or cannot agree on guilt,'" and that the charge might be clearer, but the charge, read as a whole, instructed the jury that at its discretion it might consider the lesser-included offenses before making a final decision as to the greater offense. *Id.* The court thus held that the charge allowed the jury to consider the entire charge as a whole and that the sequencing instruction did not require the jury to unanimously agree that a defendant was not guilty of the greater offense before it could consider a lesser-included offense. *Id.* The charge, therefore, was not erroneous. *Id.*

We conclude, likewise, that the virtually identical instruction in this case was a sequencing instruction that did not instruct the jury that it must unanimously acquit appellant of the greater offense before proceeding to the lesser offense, but instead required it to unanimously acquit him or convict him of one of the offenses charged only after the jury had considered whether he was "guilty of any offense defined in the charge." Therefore, the charge was proper.

Having determined that there was no error in the jury charge, we overrule the first part of appellant's first issue.

### 2. *Jury Argument*

In the second part of his first issue, appellant argues that the trial court erred in permitting the State to make an argument to the jury interpreting the instructions in the charge as stair-step instructions that required them unanimously to

convict or acquit appellant of capital murder before considering whether he might be guilty only of the lesser included charge of murder.

Appellant complains of part of the State's closing argument paraphrasing the trial court's instructions to the jury, in which the State argued as follows:

[State]: You're going to see periodically in the charge admonishments like this. If you have a reasonable doubt thereof, you will acquit on capital murder and next consider the lesser offense. You're going to see an admonishment at the end of all the lessers that says if you believe from the evidence beyond a reasonable doubt the defendant is guilty of either capital murder or one of the lessers, you resolve the doubt in the defendant's favor.

An admonishment to you to resolve doubt like that in the defendant's favor is not directions for you to go back in the jury room, talk to the 12 jurors, and when you realize somebody else thinks maybe it's a lesser and you think it's capital murder, that you must, absolutely, at that moment give up and go the lesser because they disagree with you.

This is deliberations. You should go back and you should discuss. And just because there's an initial discussion does not mean that you automatically have to reduce to the lowest charge. Remember how lessers work and how you are instructed to deliberate on them. *You have to decide whether he is guilty or not guilty of capital murder first. If you have a reasonable doubt, then you must acquit him of capital murder. And remember, it's an individual deliberation. If you believe he's guilty of capital murder, then that is your deliberation. And all 12 of you, in or-*

*der to get to a lesser offense and start deliberating about that, you are told in that charge—*

[Appellant]: *Objection as to any instructions at this point as to how to deliberate. That's outside the charge.*

[Court]: *Just restate your argument. That's overruled.*

[State]: *Yes, ma'am.* That charge instructs you that you must first deliberate on the higher offense and only if, effectively only if you acquit of capital murder do you then consider the next offense of felony murder. And only if you acquit of felony murder do you go down to the next. The bottom line is when you go back there to deliberate and you believe beyond a reasonable doubt that [appellant] intended to kill one of those two men and he did kill [the complainant] while he was trying to commit a robbery, he is guilty of capital murder and that is it. You do not deliberate about any of and do not discuss the lessers at all.

(emphasis added).

Appellant argues that the State introduced a unanimity requirement into its statement of the law and that the trial court erred in failing to sustain his objection to the State's misstatement of the law and thus deprived him of his constitutional right to due process by requiring him to mount a successful defense to capital murder before considering the lesser included charge of felony murder or any other lesser included charge. He argues that the State's argument violated the rule set forth in *Apprendi* that it is a violation of constitutional due process for a state legislature to remove from a jury the assessment of facts, other than the fact of prior conviction, that increase the prescribed range of penalties to which a defendant is exposed. *See* 530 U.S. at 490, 120 S.Ct. at 2362–63. Appellant contends that the State's jury argument lessened the burden

of proof required for the jury to convict appellant of the greater offense of capital murder because the jurors could not compare evidence in support of that offense with the evidence in support of felony murder, focusing on the distinguishing elements. *See id.*

*Improper jury argument*

■■ To be permissible, jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State,* 270 S.W.3d 564, 570 (Tex.Crim.App.2008). "It is not error for the State to quote or paraphrase the jury charge, even if the charge presents a negative instruction to the panel." *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990). However, argument that misstates the law or is contrary to the court's charge is improper. *Id.; Burke v. State,* 652 S.W.2d 788, 790 (Tex.Crim.App.1983); *Grant v. State,* 738 S.W.2d 309, 311 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd). By overruling the defense's objection to the prosecution's misstatement of the law, a trial court puts the stamp of approval on the prosecutor's misstatement of the law. *See Griffin v. State,* 779 S.W.2d 431, 434 (Tex.Crim.App. 1989); *Burke,* 652 S.W.2d at 790; *Lee v. State,* 971 S.W.2d 130, 131 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

Here, the State paraphrased the jury instruction correctly by telling the jurors that, while they had to decide whether appellant was "guilty or not guilty of capital murder first," if they had a reasonable doubt they had to acquit him of capital murder, "[a]nd remember, it's an individual deliberation." The State then stated, "And all 12 of you, in order to get to a lesser offense and start deliberating about that, you are told in that charge—." Appellant timely objected "as to any instructions at this point as to how to deliberate.

That's outside the charge." While the trial court overruled appellant's objection, it also instructed the State to restate its argument. After the court's admonishment to "restate your argument," the State did not finish its statement to the jurors as to how to deliberate or introduce a unanimity requirement into the charge. As appellant noted in his brief, the State's closing argument tracked the language of the trial court's charge, a charge that the Court of Criminal Appeals approved in *Barrios.*

We hold that the trial court did not err in overruling appellant's objection to the State's jury argument.

We overrule appellant's first point of error.

## Factual Sufficiency

■ In his second point of error, appellant argues that the evidence presented at trial was factually insufficient to sustain his conviction because the evidence failed to prove appellant's intent to kill the complainant.

*Standard of Review*

Evidence is factually insufficient to support the verdict if it is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *Rollerson v. State,* 227 S.W.3d 718, 724 (Tex.Crim.App.2007). A factual sufficiency review involves three ground rules. *Lancon v. State,* 253 S.W.3d 699, 704 (Tex. Crim.App.2008). First, we must recognize that a jury has already passed on the facts, and we must accord the jury the proper deference to avoid substituting our judgment for that of the jury. *Id.* at 704–05 (citing *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996)). Second, where we find the facts determined by the jury to be insufficient to affirm a conviction, we must clearly lay out and explain how the evidence supporting the verdict is too weak

on its own, or how contradicting evidence greatly outweighs evidence supporting the verdict. *Id.* at 705. Finally, we view all of the evidence in a neutral light when conducting this review. *Id.* We may only set aside a verdict where the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly unjust. *Id.* (citing *Cain v. State,* 958 S.W.2d 404, 406 (Tex.Crim.App.1997)).

*Capital Murder*

A person commits capital murder if he intentionally or knowingly causes the death of an individual and intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp. 2008); *Dominguez v. State,* 125 S.W.3d 755, 761 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (Vernon 2003); *Dominguez,* 125 S.W.3d at 761. A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(17) (Vernon Supp. 2008); *see Wright v. State,* 591 S.W.2d 458, 459 (Tex. Crim.App.1979) (holding that evidence defendant pointed "gun," "pistol," or "revolver" at complainant was sufficient to prove use of "deadly weapon").

"The distinguishing element between felony murder and capital murder is the intent to kill." *Fuentes v. State,* 991 S.W.2d 267, 272 (Tex.Crim.App.1999). Intent is most often proven through the circumstantial evidence surrounding the crime. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *overruled on other grounds, Fuller v. State,* 829 S.W.2d 191 (Tex.Crim.App.1992); *Dominguez,* 125 S.W.3d at 761. A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Hernandez,* 819 S.W.2d at 810; *Beltran v. State,* 593 S.W.2d 688, 689 (Tex.Crim.App.1980); *Dominguez,* 125 S.W.3d at 761. Additionally, intent to kill may be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Dominguez,* 125 S.W.3d at 762 (holding evidence permitted inference of intent to kill when defendant and other members of his gang planned to rob person walking alone at night, and, in course of theft or attempted theft of complainant, defendant retrieved loaded shotgun from car trunk and shot complainant in abdomen, resulting in complainant's death). When a deadly weapon is fired at close range, and death results, the law presumes an intent to kill. *Childs v. State,* 21 S.W.3d 631, 635 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

Here, the jury was charged with the law on transferred intent. Transferred intent occurs when a defendant, with the required culpable mental state, intends to injure or harm a specific person but injures or harms a different person or both. TEX. PENAL CODE ANN. § 6.04(b)(2) (Vernon 2003).

The State presented testimony from Boutte that appellant and his accomplice stood on the sidewalk outside an illegal gaming room and waited for Boutte to enter it. Boutte testified that, when he gained entry, appellant tried to push him

into the gaming room. He resisted and held appellant outside the door of the gaming room. Appellant then reached through the opening in the door and pointed a gun at him. Boutte testified that, as the struggle continued, appellant fired one shot. Appellant then paused for two seconds and fired another shot, striking the complainant in the abdomen and killing him. Boutte testified that appellant fired the gun "more than two times." The State also presented testimony from Davis. Davis testified that, during the struggle with Boutte, appellant pulled a gun out of his pocket and placed it through the door frame with his right arm. Appellant fired the gun once, paused for two seconds, and fired the gun again. Davis testified that he pulled appellant's right arm out of the door frame after the second shot. He and appellant then ran from the scene.

The jury was free to infer that appellant intended to kill either Boutte or the complainant when he pointed the gun at Boutte and fired the shots into the gaming room. *See Jones*, 944 S.W.2d at 647; *Childs*, 21 S.W.3d at 635; *see also* TEX. PENAL CODE ANN. § 6.04(b)(2). We conclude that the evidence of appellant's intent to kill was not so weak as to render the verdict clearly wrong or manifestly unjust. *See Lancon*, 253 S.W.3d at 704–05. We hold that the evidence presented to the jury was factually sufficient to prove that appellant had the intent to kill the complainant. *See id.; Dominguez*, 125 S.W.3d at 761–62.

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.