**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00567-CR

————————————

**HECTOR SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 10-DCR-54852**

---

# MEMORANDUM OPINION ON REHEARING[1]

A jury convicted appellant Hector Sanchez of murder and sentenced him to forty-five years in prison. *See* TEX. PENAL CODE. ANN. § 19.02 (West 2011). In two issues, he argues that the evidence was legally insufficient to support his conviction and that the State wrongfully withheld exculpatory evidence. We affirm.

## Background

Late one night in 2009, Hector Sanchez was standing outside his home with several members of his family. The complainant, Donovan Dozier, and his friend Sedarian Harris arrived in a grey sedan. Sanchez was in the drug business, and the two were visiting him in search of cocaine.

Dozier left Harris in the car and walked up to Sanchez. Neither Sanchez nor Dozier appeared agitated or upset. The two men had a short conversation, but then Dozier backed away from Sanchez, who was pointing a gun at him.

Dozier started walking backwards down the driveway in the direction of his car; Sanchez followed still pointing his pistol. When Dozier reached the driver's side door, Harris opened it. Sanchez lowered his gun to his side, and Harris

---

[1]  We originally issued our memorandum opinion in this appeal on January 23, 2014. Appellant filed motions for rehearing and for en banc reconsideration. The panel withdraws its previous memorandum opinion, vacates the prior judgment, and issues this memorandum opinion and the related judgment in their stead.

beckoned Dozier, "Come on, let's go." Dozier turned his back to Sanchez and tried to step inside the car. Dozier had one foot in the car but his shirt was being held by Sanchez. Dozier jerked, throwing his right arm upward. Sanchez pulled back on Dozier, who lost his balance and stumbled. When Dozier righted himself, he pushed Sanchez. Sanchez then shot Dozier in the face at short range.

After a jury trial, Sanchez was convicted of murder and sentenced to forty-five years in prison. He filed a motion for new trial in which he argued that potentially exculpatory information had been withheld by the State. At the hearing, the parties stipulated that neither Sanchez nor his counsel had been informed of certain facts—that gunshot residue testing had not been performed on Dozier's hands and that fingernail scrapings from Dozier's body had not been tested—until the eve of trial. The trial court denied the motion, and this appeal followed.

**Analysis**

I.     **Sufficiency of the evidence**

In his first issue, Sanchez contends that the evidence is legally insufficient to support his conviction because the record lacks evidence showing he intentionally or knowingly shot Dozier.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and

3

reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). When reviewing the evidence, an appellate court must defer to the jury's determinations of credibility and the weight appropriate to different pieces of evidence. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793).

The jury was instructed on two legal theories of murder. The jury could convict Sanchez if they found that he either "intentionally or knowingly caused the death of Donovan Dozier by shooting him with a firearm" or "unlawfully intend[ed] to cause serious bodily injury to Donovan Dozier, and did cause the death of Donovan Dozier by intentionally or knowingly committing an act clearly dangerous to human life." *See* TEX. PENAL CODE. ANN. § 19.02(b) (West 2011). A person acts intentionally when it is his conscious objective or desire to engage in conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly when he is aware of the nature of his conduct or is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Serious bodily injury is bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or

4

protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46).

"Intent is most often proven through the circumstantial evidence surrounding the crime." *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). "A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant." *Id.* Intent to kill may also be inferred from use of a deadly weapon, "unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon." *Id.* (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).

Sanchez's brother Alex was among the family members gathered outside Sanchez's home the night of the shooting. He testified that Sanchez pointed his gun at Dozier as Dozier walked backwards to his car. Sanchez lowered his gun when the two reached Dozier's vehicle. Dozier turned around and was partly in the sedan when Sanchez tapped him on the shoulder. Alex testified:

> Q. Okay, What did D [Dozier] do after Hector tapped his shoulder?
>
> A. He turned around and he pushed him
>
> Q. Did he push him with both –
>
> A. With his right arm.
>
> Q. With his right arm?

5

A. Yes

Q. Okay. And what did Hector do?

A. That's when he shot him

Q. Okay. Now how close was Hector to D, when Hector shot D?

A. More like, four feet or five feet.

Harris also testified to what happened once Dozier and Sanchez returned to the car. Harris opened the door for Dozier and started pleading for calm and a quick departure: "We're going to get out of here, we ain't going to come back." Harris said:

> I'm pleading, you know, I'm saying, you know, we're going to get out of here, whatever, whatever. And all of a sudden, Donovan snatches back, and, you know, at the same time, Hector's pulling him, he's still got him by his shirt. So, Donovan stumbles, because his foot is in the floor of the car. Donovan stumbles back into the street, but he didn't fall. And Hector just walked him down, waited until he got squared, put the gun to his face and shot him.

In a further colloquy, Harris explained:

Q. Okay. So, Hector snatches Donovan, and then the way you describe it, the way you defined it, Donovan snatches back, meaning, he's trying to get Hector's hand off of –

A. Right.

Q. —Donovan's right shoulder—

A. Right.

Q. —area. Okay. What happens immediately after that?

A. Ah, Donovan stumbles back into the street.

Q. Does he stumble—does he fall down on his car—

A. —No, he didn't fall.

Q. Okay.

A. He didn't fall.

Q. Okay.

A. So he gets himself together, he's standing straight up. And Hector, basically, just walked him down and shot him point blank in the face.

When a deadly weapon is fired at close range and death results, a reasonable factfinder can infer an intent to kill. Both Harris and Alex testified that Sanchez shot Dozier at close range; Harris described the shot as "point blank in the face." Accordingly, a reasonable jury could have found beyond a reasonable doubt that Sanchez intended to cause the death of Dozier. *See Jones*, 944 S.W.2d at 647 (holding that jury could infer intent to kill from, inter alia, use of a deadly weapon and fact that "bullet struck the victim practically between the eyes"); *Childs*, 21 S.W.3d at 635 (affirming jury's verdict when accomplice witness testified that appellant pointed loaded gun at victim and witness heard two shots after running away).

In his brief, Sanchez relies upon multiple alleged deficiencies in Harris's testimony and credibility: Harris was Dozier's friend; he received immunity from prosecution for his testimony; he claimed to have gone to Sanchez's home to purchase drugs but later admitted the men had no money with them; he smoked

7

marijuana the night of the shooting; and there were several discrepancies between his trial testimony and a prior statement to the police. When the discrepancies were brought to Harris's attention, he responded, "I don't remember half this stuff."[2]

We do not agree that the asserted shortcomings of Harris as a witness require us to find the evidence of Sanchez's state of mind legally insufficient to sustain his conviction. Where there are conflicts in the evidence, we must assume that the trier of fact resolved any such conflicts in favor of the verdict. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Likewise, Sanchez's arguments—that Harris's perceptual and cognitive capacities were compromised by marijuana use or that he was biased as a friend of complainant and a beneficiary of prosecutorial discretion—are contentions about Harris's credibility and the weight to be given his testimony. These arguments ask us to do what Texas cases uniformly declare we may not do: sit as a "thirteenth juror" and reevaluate the weight and credibility of the evidence.

---

[2] Sanchez further claims: "Harris also admitted that when Appellant and Dozier struggled, his view was blocked because Appellant was in between Harris and Dozier. Therefore, he could not possibly have seen Appellant shoot Dozier." However, Sanchez's citations to the record support the suggestion that Sanchez was positioned between Harris and Dozier, but do not support the assertion that Harris could not have seen the shooting. *See* Sanchez's Brief at 3 (citing 3 Rep. R. 161, 165). Harris agreed on cross-examination that Sanchez was positioned between him and Dozier. 3 Rep. R. 165. But Harris was adamant that he could see both men. Harris testified: "I'm looking at it from a side angle, like straight ahead, but, like a side angle. I see Donovan, I see Hector." *Id.* at 161. Harris confirmed: "I saw everything." *Id.* at 162. He reiterated: "I seen everything, I seen everything." *Id.* at 164. He again testified: "I could see everything, I seen what was going on." *Id.* at 165.

*E.g.*, *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our review "is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). As a rational jury would have been at liberty to accept the testimony of Harris and Alex quoted above and to infer intent to kill therefrom, we overrule Sanchez's first issue.

## II.    Failure to disclose exculpatory evidence

In his second issue, Sanchez claims that the State failed to disclose potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). As was stipulated at the hearing on Sanchez's motion for new trial, the State did not disclose certain facts—that gunshot residue testing had not been performed on Dozier's hands and that fingernail scrapings from Dozier's body were not tested—until either the day of or the day before trial. The State replies that Sanchez failed to preserve error because he did not raise the belated disclosures with the trial court in a timely fashion.

"A prosecutor has an affirmative duty to turn over material, favorable evidence to the defense." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Reversal is required when the prosecutor fails to disclose evidence, the evidence is favorable to the accused, and the evidence creates a probability

sufficient to undermine confidence in the outcome of the proceeding. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

"When there has been an untimely disclosure of evidence, rather than a complete failure to disclose, the defendant must show he was prejudiced by the tardy disclosure." *Davis v. State*, 992 S.W.2d 8, 12 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *accord Little*, 991 S.W.2d at 866. "If a defendant received the evidence in time to make effective use of the evidence, his conviction will not be reversed." *Davis*, 992 S.W.2d at 12; *accord Little*, 991 S.W.2d at 866. "A defendant's failure to request a continuance indicates that the tardy disclosure of the evidence was not prejudicial." *State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Davis*, 992 S.W.2d at 12).

In this case, Sanchez's counsel learned the facts in question on either the day of trial or the day before it. He did not request a continuance, and he did not object to the late disclosure until he filed his motion for new trial in the aftermath of the jury's verdict. Rather, Sanchez cross-examined the State's forensic pathologist at trial about the failure to perform the testing.

This court addressed a similar situation in *Fury*. During cross-examination of the complainant, the defendant in *Fury* learned that pictures had been taken of the complainant's injuries. *Id.* at 74. He did not request a continuance or take action to obtain the photographs at that time. *Id.* Instead, he used the failure to

produce the photographs as a point of impeachment during cross-examination. *Id.* at 70–71. It was only after the jury returned its verdict that the defendant objected, in a motion for new trial, that the existence of the photos had not been disclosed. *Id.* at 74. This court ruled that by delaying his objection, the defendant "either waived any *Brady* error or failed to show that any *Brady* error prejudiced him." *Id.* (citing *Davis*, 992 S.W.2d at 12).

Our holding here necessarily follows *Fury*. Since Sanchez did not move for a continuance or otherwise raise the State's failure to disclose until his motion for new trial, Sanchez either waived any *Brady* error or failed to show that any such error prejudiced him. Accordingly, we overrule Sanchez's second issue.

**Conclusion**

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).