

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00740-CR

Fernando **CANO-GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2016CR000427 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:       Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice
              Irene Rios, Justice

Delivered and Filed:  March 28, 2018

AFFIRMED

Fernando Cano-Garcia appeals his conviction for aggravated sexual assault of a child.  We

affirm the judgment of the trial court.

### BACKGROUND

Cano-Garcia was charged with sexually assaulting his niece, "Catalina."[1]  On June 20,

2014, between 11:00 p.m. and 7:00 a.m., Cano-Garcia took Catalina and his two sons to his

---

[1] A pseudonym for the child victim was used at trial and we likewise use the same pseudonym in this opinion. *See*
TEX. R. APP. P. 9.10(a)(3).

workplace. The children waited in his vehicle while he went inside to work. Catalina, who was then almost twelve years old, testified that at around 3:00 a.m., she was watching a movie in the Ford Expedition with her cousins when her uncle, Cano-Garcia, told the boys to move to the back of the vehicle and told Catalina to move to the middle seat. The children all fell asleep, and at some point, Cano-Garcia returned to the vehicle and started to pull Catalina's jeans down. Catalina stated that he held her down with his arm and started kissing her on her stomach underneath her clothing. At that time, she got up and hit him. "I slapped him, and then he put his fingers in my vagina." She stated that her underwear was down when he put his fingers in her vagina. After she slapped him, he moved off her and left the car to wash his hands with the hose outside. Catalina pulled up her pants and he came back to the vehicle and told her that if she said anything, it would be her fault that "his children didn't have a dad." About ten minutes later, they returned to the family's apartment. Catalina told her mother that her uncle had pulled her pants down, but was afraid to tell her anything more.

Catalina's mother testified that at the time of the incident in question, her family lived in an apartment with her sister's husband, Cano-Garcia. She allowed her children to go with Cano-Garcia to his workplace at night so that they could use the internet. On the night in question, she remembered talking to Catalina on the phone at about 12:30 a.m. Catalina's mother testified that when Catalina returned home in the morning, she was trembling and she told her, "my uncle - - he touched me, and he was kissing me, and when I woke up he told me you're dreaming. You're asleep." Catalina's mother continued, stating, "[s]o, then [Catalina] said that he had started kissing her, her stomach, and going down and he had started to grab her from the legs and pull her pants down." "She only told me that he had kissed her in her stomach towards the bottom." Catalina's mother immediately confronted Cano-Garcia and asked him, "why did you do this to my daughter?" Catalina's mother's sister then slapped Cano-Garcia in anger; he replied, "fine, call

the police." The family, however, never contacted the police. In October, a counselor at Catalina's school reported the incident to police after Catalina got in trouble for having cigarettes at school and stealing popsicles. Catalina's mother testified that after the incident, her daughter's temperament changed. She was always in a very bad mood and her grades in school began to lower.

Catalina's father testified that he came home on June 20, 2014 to find Cano-Garcia outside of the apartment complex looking "worried, scared." Cano-Garcia told him, "I messed up. I'm sorry. I messed up. I don't know what to do. You can do whatever you want with me. I know I messed up." Catalina's father went inside the apartment to speak with Catalina. She was crying, and said that "her uncle had touched her, . . . but that he hadn't done anything [more] to her." Cano-Garcia left the apartment for two weeks. Catalina's father stated that after the incident, his relationship with his daughter changed. She no longer allowed him to hug her. She also no longer wanted to see her uncle, who had moved back into the apartment. Catalina's father explained that his family remained in the apartment with Cano-Garcia because they did not have the money to get their own apartment. Also, they did not call the police due to a fear of deportation.

Doctor Amando Garza, a pediatrician with specialized training in child sexual abuse, interviewed and examined Catalina in November 2014, approximately four months after the assault occurred. Dr. Garza testified that in most cases, a physical exam performed after a child has been sexually assaulted will not "reveal much, unless it's something that's been acute within the first 72 hours." Dr. Garza stated that more than 80 percent of the time, there is no physical confirmation of the abuse. He stressed that the interview is "always the most important part." Dr. Garza testified that Catalina told him that Cano-Garcia "forced himself upon me, he forced my pants down and he began to suck my private area" and that then "he stuck his finger in my private area." Catalina also mentioned that Cano-Garcia had threatened her not to tell anyone what

happened. Given the time that had passed since June, Dr. Garza was not surprised that he did not find any evidence of physical abuse. He stated that the lack of physical injuries does not indicate that the abuse did not occur.

Veronica Valdez with the Children's Advocacy Center testified she conducted a forensic interview with Catalina in October 2014. Catalina told Valdez her uncle put "his finger inside her front part." Catalina identified her "front part" as her vagina. She also told Valdez her uncle kissed her in her "front area." According to Valdez, Catalina clarified that when she said her uncle sucked her private area, she meant that he kissed her stomach.

Cano-Garcia testified in his own defense and categorically denied the allegations against him. He stated that when his sister-in-law confronted him, his wife got mad and kicked him out of the apartment. He told them to call the police because he felt insulted and ganged up on. His eleven-year-old son testified that he remembered going to his father's workplace with his cousin Catalina on the night in question and that he did not see or hear anything.

The jury found Cano-Garcia guilty of aggravated sexual assault of a child as charged in the indictment and assessed punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court entered a judgment in accordance with the jury's verdict and punishment recommendation.

ANALYSIS

On appeal, Cano-Garcia raises seven issues. The first three issues relate to the jury charge. Issues four and five allege that trial counsel was ineffective. In his sixth issue, Cano-Garcia argues the trial court erred in permitting improper argument. In his seventh issue, Cano-Garcia asserts the errors were harmful in their cumulative effect.

*Jury Charge*

The indicted offense was aggravated sexual assault, committed by penetrating Catalina's sexual organ with Cano-Garcia's fingers. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2017). The jury was also instructed on the lesser-included offense of indecency with a child by contact. *Id.* § 21.11(a)(1) (West Supp. 2017). Cano-Garcia argues, however, that the wording of the lesser-included offense was incorrect and therefore amounts to no instruction at all.

A claim of jury charge error is governed by the procedures set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We must first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). In determining whether error occurred, we engage in a two-step lesser-included-offense analysis. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). First, we compare the elements and the facts of the offense alleged in the indictment with the elements of the potential lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense. *Id.* at 531, 535. This question is a matter of law, and is not dependent on the evidence to be produced at trial. *Id.* at 535; *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). The second step of the analysis requires us to determine whether there is some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall*, 225 S.W.3d at 536. "The evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536).

We will assume that the first step of the lesser-included-offense analysis has been met and indecency with a child is a lesser-included offense of aggravated sexual assault of a child. *See, e.g., Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) ("The court of appeals reached

the correct result by holding that indecency with a child is a lesser-included offense of aggravated sexual assault of a child when both offenses are predicated on the same act."). In considering whether a lesser-included offense is a valid, rational alternative, we must compare the statutory requirements of the greater offense and the lesser offense to determine whether evidence exists to support a conviction for the lesser offense but not the greater offense. *See Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016). The key distinction between aggravated sexual assault and indecency with a child by contact is that aggravated sexual assault requires penetration of the female sexual organ while indecency with a child may be proved by mere touching of the child's genitals or touching of the child with the defendant's genitals. *See Evans*, 299 S.W.3d at 142; *compare* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2017), *with* TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West Supp. 2017).

As to the lesser-included offense of indecency with a child by contact, the trial court instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the 20th day of June 2014, in Webb County, Texas, the defendant, FERNANDO CANO-GARCIA, did then and there, intentionally and knowingly engage in sexual contact with "Catalina," a person younger than seventeen years of age and not the spouse of the defendant, **by touching through clothing** the genitals of "Catalina" with the intent to arouse or gratify the sexual desire of the defendant, then you will find the defendant guilty of the lesser included charge.

(Emphasis added). Cano-Garcia contends there was no testimony that Catalina was touched on her sexual organ over clothing. He further argues the trial testimony varied as to whether he only touched her sexual organ with his fingers or whether he penetrated her sexual organ, but that the imposition of clothing was never mentioned. Thus, he argues that as the charge was written, the jury could not give effect to the lesser-included offense of indecency with a child by contact.

Cano-Garcia argues that there was no physical evidence confirming penetration; Catalina changed her story from being kissed or sucked on the vagina to being kissed on the stomach; that

it was not until the eve of trial that she said she had not been kissed on the vagina; that it was not until she was called in to the office at school for having cigarettes and stealing that she changed her story; and that her household was unstable and she fought with her mother.

As Cano-Garcia concedes, there is some evidence that inappropriate touching may have occurred, but it does not negate or rebut the penetration element of the greater offense of aggravated sexual assault. *See Hendrix v. State*, 150 S.W.3d 839, 850 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The medical evidence was not inconsistent with penetration and did not rebut the evidence of penetration. *See id.* at 851. In addition, Catalina unequivocally testified that Cano-Garcia put his fingers in her vagina. Her testimony alone is sufficient to establish the elements of the offense of aggravated sexual assault. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (holding testimony of complainant regarding sexual offense was sufficient, standing alone); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.) (holding testimony of victim regarding sexual offenses was sufficient evidence to support conviction); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2017) (providing that, under certain circumstances, convictions for sexual offenses are supportable on the uncorroborated testimony of a child victim under seventeen years of age). Although there was evidence to support a conviction for the lesser-included offense of indecency by contact, there was no conflict raised by the evidence that would enable a rational finder of fact to conclude that Cano-Garcia was guilty *only* of the lesser included offense. *See Hendrix*, 150 S.W.3d at 850-51; *see also Schmidt v. State*, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009) (stating that "there must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater" charged offense to entitle defendant to lesser-included-offense instruction); *Wasylina v. State*, 275 S.W.3d 908, 909-10 (Tex. Crim. App. 2009) ("The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the submission of a lesser-

included-offense instruction because the evidence does not show that the defendant is guilty *only* of the lesser-included offense."). Catalina testified that Cano-Garcia put his fingers in her vagina. Dr. Garza testified that Catalina told him that Cano-Garcia "stuck his finger in my private area." Given the evidence of penetration, the record before us does not contain "some evidence" showing Cano-Garcia was guilty only of indecency with a child by contact. Accordingly, we conclude the trial court did not err by giving an erroneously worded lesser-included offense instruction to the jury. We overrule Cano-Garcia's first two issues on appeal.

In his third issue, Cano-Garcia argues the trial court erred in instructing the jury that it must unanimously agree that he was not guilty of aggravated sexual assault before considering the lesser-included offense. When reading the charge to the jury, the trial court stated as follows: "And on Page 7, again, and this is for the lesser included offense of indecency with a child by contact, which you only consider if you've moved on from that first charge. I'm sure [the prosecutor] will explain that to you in her closing." In closing, the State explained to the jury that it was required to "unanimously" reject the greater offense before considering the lesser-included offense.

The charge, as submitted by the trial court, was not erroneous. *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)). The trial court read the entire charge to the jury before the start of deliberations, making the jury aware of the lesser-included offense. The application paragraphs included instructions requiring the jury to acquit appellant of the greater offense before considering the lesser offense, and also instructed the jury to acquit appellant if it had a reasonable doubt that appellant was guilty of any offense after considering the evidence and the instructions. The order in which the jury took up the various parts of the charge was within its discretion. We conclude the trial court's charge was not erroneous. *See Barrios*, 283 S.W.3d at 352-53; *see also Sholars v.*

*State*, 312 S.W.3d 694, 699-700 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that similar charge instructing jury to decide whether appellant was guilty or innocent of offense before considering lesser-included offense was a proper sequencing instruction). We therefore overrule Cano-Garcia's third issue.

*Ineffective Assistance of Counsel*

In his fourth and fifth issues, Cano-Garcia argues trial counsel was ineffective in two regards. First, counsel failed to ensure the jury was given an effectual lesser-included offense instruction (same argument made in second issue). Second, counsel failed to object to the trial court and the State restricting the ability of the jury to consider the lesser-included offense (same argument made in third issue).

To prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To show deficient performance, the defendant must prove by a preponderance of the evidence that his counsel's representation fell below the standard of professional norms." *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007).

"To establish [a] claim that defense counsel's performance was deficient for failing to request an instruction on [a] lesser included offense," the defendant first "must show that he was entitled to the instruction." *Shanklin v. State*, 190 S.W.3d 154, 159 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). We have already determined that Cano-Garcia was not entitled to a lesser-included instruction on indecency with a child by contact. We also determined in regard to Cano-Garcia's third issue that the jury charge was not erroneous. Having made those determinations, we cannot conclude Cano-Garcia has demonstrated that trial counsel's performance was deficient. We thus overrule Cano-Garcia's fourth and fifth issues on appeal.

*Improper Jury Argument*

Cano-Garcia next argues the trial court erred in permitting improper argument. In closing, the prosecutor argued, "[Cano-Garcia] never denied touching her. He never denied pulling down her pants, pulling down her underwear, putting his finger inside of her vagina." Cano-Garcia objected to this argument as a mischaracterization of the testimony, and the trial court overruled his objection. On appeal, he contends the State's argument had the prejudicial effect of suggesting he admitted to the allegations against him by not denying the specific acts.

Proper jury argument is generally limited to (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's arguments, and (4) pleas for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Dukes v. State*, 486 S.W.3d 170, 183 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "The trial court has broad discretion in controlling the scope of closing argument." *Nickerson v. State*, 478 S.W.3d 744, 761 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Here, the prosecutor's comments in closing referred to the fact that Cano-Garcia did not deny touching Catalina when confronted by his sister-in-law. Catalina's mother testified that when she asked Cano-Garcia, "why did you do this to my daughter? he replied, "I don't know what you're talking about." In other words, instead of denying that he assaulted Catalina, he pled ignorance. Thus, the prosecutor's comments were not improper, but were an accurate summation of Catalina's mother's testimony. The jury also had before it Cano-Garcia's testimony, wherein he acknowledged taking Catalina with him to work on the occasion in question, but otherwise denied committing any improper act against Catalina, to rebut any inference that he admitted to the allegations against him. Therefore, the trial court did not abuse its discretion in overruling Cano-Garcia's objection. Accordingly, we overrule Cano-Garcia's sixth issue.

*Cumulative Harm*

Finally, Cano-Garcia contends the number of errors below were harmful in their cumulative effect. The Texas Court of Criminal Appeals has recognized the conceivability that "a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But because we have held in each of his issues above that no error occurred, there is no harm accumulated. *See Murphy v. State*, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) ("Because we have found little or no error in the above-alleged points, there is no harm or not enough harm to accumulate."). Accordingly, we overrule Cano-Garcia's seventh and final issue on appeal.

## CONCLUSION

Having overruled each of Cano-Garcia's issues on appeal, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

DO NOT PUBLISH